[No. 20873. Department One. April 14, 1928.]

Robert Stanton, *Appellant,* v. Yakima Valley Bank, *Respondent.*[1]

[1] Banks and Banking (32)—Powers and Duty to Make Collections—Liability of Bank for Negligence as to Securities. In an action against a bank for negligence in substituting bonds held by plaintiff as collateral for a note placed with the bank for collection, defendant is entitled to judgment, as a matter of law, where the substitution was made pursuant to plaintiff's request accepting bonds similar to part of those already held as expressly authorized in writing, to which the plaintiff made no objection until after default.

Appeal from a judgment of the superior court for Yakima county, Nichoson, J., entered March 7, 1927, upon an instructed verdict rendered by a jury in favor of the defendants, in an action for damages for breach of contract. Affirmed.

*Joseph C. Cheney* and *Nat U. Brown,* for appellant.

*H. J. Snively,* for respondent.

Parker, J.—The plaintiff, Stanton, seeks recovery of damages from the defendant bank, which he claims to have suffered as the result of the bank's negligence in surrendering certain bonds deposited by Stanton with it, held by him as security for a note belonging to him, which was also left with it for collection; the bank claiming to have been authorized by Stanton to make such surrender of the bonds and accept other bonds in lieu thereof. The case proceeded to trial in the superior court for Yakima county, sitting with a jury. Upon the close of the introduction of the evidence, counsel for the bank moved for an instructed verdict in its favor, insisting that it was entitled to

[1]Reported in 266 Pac. 199.

have the case so disposed of as a matter of law. This motion was granted, and verdict and judgment were rendered accordingly. From this disposition of the case in the superior court, Stanton has appealed to this court.

The controlling facts, as we read this record, are admitted and otherwise clearly established by Stanton's own testimony, and may be summarized as follows: On June 16, 1922, Stanton loaned to H. P. Pratt & Company, a corporation, $4,500, taking its promissory note therefor, at the same time receiving from Pratt & Company Richland bonds of the face value of $5,000 as collateral security for the payment of that note. On that day, Stanton left the note with the bank for collection, and also left with the bank the Richland bonds given to him by Pratt & Company as collateral security. At that time, Stanton gave to the bank, written on letter-head stationery of Pratt & Company, the following authorization:

" H. P. PRATT & COMPANY
"Investment Securities

"Yakima Valley Bank,          Yakima, Washington
  "Yakima, Washington.          June 16, 1922
"Gentlemen:

"You are hereby authorized to permit H. P. Pratt & Company to substitute collateral as security on the note attached to this letter, as follows:

"Richland Bonds at 90% of par value
"Attalia Bonds at 90% of par value
"Attalia Warrants at 90% of face value
and accrued interest, and such other collateral as may be acceptable to myself from time to time.

"Yours very truly,
"Robert Stanton."

Soon thereafter Stanton left Yakima and went to Bryn Mawr, near Seattle, to spend the summer, remaining there until sometime in September. On August

22, 1922, Stanton, from Bryn Mawr, addressed to the cashier of the bank and put in the hands of Pratt & Company at its request, for delivery to the bank, the following communication:

"Bryn Mawr, Wash.
"August 22, 1922.
"Mr. Heath, Cashier, Y. V. B.,
"If H. P. Pratt & Co. wants to sell any of the bonds I hold as collateral, they can have them by leaving others with you of the same amount that you will pass upon 'safety first.'
"Please send me Sept. 1, July and August statements, as we will not return until later.
"Yours Faithfully,
"Robert Stanton."

It is conceded that the words "I hold as collateral," as therein used, mean the Richland bonds in question. The last paragraph manifestly refers only to Stanton's general deposit account with the bank. Soon thereafter this communication was delivered to the bank by Pratt & Company, and soon thereafter the bank accepted from Pratt & Company Attalia bonds of the face value and amount as specified in Stanton's authorization of June 16th, in lieu of the Richland bonds, which the bank accordingly surrendered to Pratt & Company. Maturing interest coupons on the Attalia bonds were thereafter collected by the bank in January and July, 1923, and credited to Stanton upon his general deposit account. Thereafter, as we shall assume, the payee of the Attalia bonds defaulted in payment of interest, and thereafter those bonds proved to be of but small, and possibly no value. Thereafter Pratt & Company became insolvent, and its creditors received no dividends. In this manner, Stanton lost practically the whole of the amount loaned by him to Pratt & Company.

Merely as sidelights to this controversy, negativing negligent exercise of discretion on the part of the bank in accepting Attalia bonds as substituted collateral, we make the following observations: There is no evidence that the bank or any of its officers in any manner advised or induced Stanton to make the loan to Pratt & Company. There is no evidence that the bank or any of its officers in any manner advised or induced Stanton to write the communication of August 22d. There is no evidence of the bank having required of, or demanded from, Pratt & Company any authority, in addition to that evidenced by the authorization of June 15th, for it to surrender the Richland bonds and accept in lieu thereof Attalia bonds as collateral security to the note. There is no evidence of the bank ever being better advised than Stanton himself as to the value of Attalia bonds. There is no evidence of the bank or its officers having any reason to believe that the purpose of the authorization of August 22d, brought to it by Pratt & Company from Stanton, was other than that of an authorization on the part of Stanton for the bank in its discretion to receive from Pratt & Company, in lieu of the Richland bonds, collateral other than "Richland bonds," "Attalia bonds" and "Attalia warrants," as enumerated in the authorization of June 16th. Whatever discretionary authority was given by Stanton to Pratt & Company by the communication of August 22, 1922, manifestly was not necessary to be exercised by the bank, nor was the bank asked by Pratt & Company to exercise any such authority. No objection was made to the bank by Stanton to its having accepted substitution of the Attalia bonds for the Richland bonds, until after default in payment of interest on the Attalia bonds in the summer of 1923.

It seems to us that the conceded and undisputedly proven facts argue conclusively this whole case in support of its disposition as made by the trial court. It seems very clear to us that the bank accepted substitution of Attalia bonds for Richland bonds as collateral security for the note given by Pratt & Company to Stanton, strictly in accordance with the unrevoked authority given to the bank by Stanton by the authorization of June 16th. The case seems to have been waged upon the theory that the bank was called upon to exercise some discretion in accepting substituted collateral, touching the value of substituted collateral. Had the bank accepted substituted collateral other than that specifically enumerated in the authorization of June 16th, this theory would have some place in our present inquiry; but that is of no moment here. There was nothing for the jury to decide.

The judgment is affirmed.

MITCHELL, FRENCH, and ASKREN, JJ., concur.